IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 19-03105-MV |
| | ) | |
| vs. | ) | |
| | ) | |
| **TRISTIAN CADMAN**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' SENTENCING MEMORANDUM
AND OPPOSED MOTION FOR AN UPWARD VARIANCE**

The United States respectfully submits this sentencing memorandum and requests the

Court adopt the findings in the presentence investigation report (PSR), and sentence Defendant

to imprisonment for 376 months, followed by five years of supervised release with the conditions

contained in attachment A of the Presentence Investigation Report, and $200 special penalty

assessments.

I.      **Facts**

John Doe and A.B. met though Facebook in 2019.  They enjoyed an intimate relationship

throughout the summer.  A.B. often worked graveyard shifts, so the two would often only be able

to spend time together late at night.  A.B. had to work the graveyard shift on August 21, 2019, so

they decided to socialize together the night before.  Wanting privacy, Doe drove A.B. to a remote

part of the Navajo Nation.  They socialized and shared a couple of beers.  (Doc. 35, ¶ 15).  Little

did they know, they were being watched.

Early in the morning of August 21, 2019, Defendant and his juvenile friend, Daniel G., saw Doe's van parked in a remote area.  *Id.*, ¶ 20.  They decided to rob the occupants of the van, so they parked down the road, covered their faces with shirts, and armed themselves with firearms.  *Id.*  They quietly approached the van, and when in position, directed the occupants to get out.  Doe and A.B. reluctantly agreed and exited the van.  *Id.*, ¶ 15.

Once Doe and A.B. were outside, Defendant and Daniel G. demanded money and alcohol.  *Id.*  Doe and A.B. did not have money but they gave Defendant the remaining beers from the six-pack.  During the exchange, a scuffle ensued.  *Id.*  A.B. was injured.  *Id.*  She was struck in the head, requiring hospitalization and stitches.  *Id.*  Doe would never make it to a hospital.  Defendant shot Doe in the chest  with a .22, sending a projectile through his heart and lung.  *Id.*, ¶ 16.  Doe did not die instantly.  He spent his last moments bleeding on the desert ground, "gurgling" the blood that filled his throat.  *Id.*, ¶ 15.

After shooting Doe, Defendant and Daniel G. fled back to their vehicle.  They got inside and drove away, bragging about their exploits.  Daniel G., proud of punching Doe, recalled how Doe's eyes rolled to the back of his head.  *Id.*, ¶ 30.  Not to be outdone, Defendant exclaimed, "Did you see what I did to his stomach?!?"  *Id.*  Daniel G. agreed, remarking, "You shot him in the stomach!"  *Id.*

After A.B. made a partial identification of the masked robbers, the FBI initiated an investigation.  *Id.*  They located Defendant and Daniel G. and interviewed them both.  *Id.*, ¶¶ 18-26.  Defendant lied his way through two interviews.  It was only when faced with several inconsistencies that he finally admitted he was the shooter.  *Id.*, ¶¶ 21-26.  Defendant was charged with murder by criminal complaint.  (Doc. 2).

2

On September 11, 2019, a federal grand jury indicted Defendant for first-degree murder in Indian Country and discharging a firearm during a crime of violence.  (Doc. 14).  On November 24, 2020, Defendant pleaded guilty to an information charging second-degree murder and discharging a firearm during a crime of violence.  (Doc. 31).  As part of the plea agreement, the parties are permitted to argue any statutorily authorized sentence.  *Id.*, ¶ 9(b).

On January 28, 2021, the USPO submitted a PSR to the Court.  (Doc. 35).  The USPO calculated Defendant's guidelines range as 288 to 330 months of imprisonment.  *Id.*, ¶ 93.  The United States asserts that full consideration of the sentencing factors warrants an upward variance to a period of imprisonment for 376 months followed by five years of supervised release with the conditions described in the PSR.

## II.   Analysis Under 18 U.S.C. § 3553(a)

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing.  *United States v. Booker*, 543 U.S. 220 (2005).  While a sentence within the guidelines is presumptively reasonable, a court may vary after consideration of all of the sentencing factors.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  The greater the degree of variance, the greater the justification needed.  *Id.*

An upward variance is warranted.  Full consideration of the sentencing factors supports an imposition of a sentence slightly above the presumptively reasonable guidelines range.  While several factors weigh neutrally, the nature and circumstances of the offenses, defendant's history and characteristics, need for adequate deterrence, the applicable sentencing guidelines, and the need to avoid disparities support an imposition of an upward variance.

A. **The Nature and Circumstances of the Offenses and the Defendant's History and Characteristics**

A court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1). This analysis "is aimed at distinguishing among defendants who commit a particular offense or type of offense." *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010). In distinguishing, a court may consider whether a defendant's conduct resulted in multiple victims. *United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014).

The nature and circumstances of the offense supports imprisonment for 376 months. During a botched robbery, Defendant murdered a thirty-two-year-old man in cold-blood. Defendant left Doe gurgling blood on the desert floor, while Defendant bragged about his exploits. Defendant's callous recall of the murder in front of his friends is indicative of his cruelty and absence of remorse. Conversely, Doe and his family suffered greatly from the Defendant's conduct. Doe's family will never recover from this "act of evil that took minutes to happen." (Doc. 35-2). Doe's parents, siblings, and his two daughters, aged seven and nine, will never have Doe in their lives. *Id.* Some family members even suffer from suicidal ideation. *Id.* The nature of the murder itself warrants a sentence on the high end of the guidelines, while the additional victimization of A.B. warrants an upward variance.

A court may consider whether the guidelines sufficiently account for a defendant's conduct that resulted in multiple victims. In *Lente*, the Tenth Circuit upheld the substantive reasonableness of a 337% upward variance based partly upon the victimization of multiple people. *Lente*, 759 F.3d 1149. Lente's sentence was based upon three involuntary manslaughter convictions. *Id.* Lente's guidelines assessment considered all three victims. *Id.* at 1162. However, the Tenth Circuit noted the presence of multiple victims "only marginally increased

punishment." *Id.*  Despite conceding that the presence of multiple victims is based largely on chance, the Tenth Circuit found it to be appropriate to "consider the harm" caused to all victims. *Id.* at 1164.

The guidelines did not consider the harm to A.B.  Despite the immeasurable impact of Defendant's act on Doe and his family, the guidelines completely failed to account for any harm to A.B.  During the armed-robbery and murder of John Doe, Defendant and Daniel G. assaulted A.B.  The injury caused a laceration to her head requiring hospitalization and stitches.  (Doc. 35, ¶ 15).  They threatened to kill her if she spoke with the police.  *Id.*  To this day, she suffers from "long-lasting effects on her life, and most nights she experiences night terrors and wakes up sobbing."  *Id.*, ¶ 34.  She has even had to resort to medication to ease her trauma.  *Id.*  A.B. suffered from serious physical and emotional harm, which was not even considered by the guidelines.

The victimization of A.B. warrants an upward variance of 46 months above the high-end of the assessed guidelines range.  Such a variance would be less than a 14% upward variance, significantly less than at issue in *Lente*.  Furthermore, the guidelines in *Lente* admittedly took account of the multiple victims, just not to a degree that accurately reflected the harm.  Here, the assessed guidelines did not even consider the harm to A.B.  Thus, it is even more necessary to impose an upward variance.

The upward variance of 46 months is based upon the probable guidelines range for a conviction commensurate with the harm against A.B.  Aggravated assault has a base offense level of 14.  U.S.S.G. § 2A2.2(a).  A defendant's discharge of a firearm and causation of serious bodily injury increases the offense level by an aggregate of 10 additional levels.  *Id.*, 2A2.2(b).  After granting Defendant 3 points for acceptance of responsibility, the adjusted offense level

would be 21.  An offense level of 21, coupled with a criminal history category of I results in an applicable guidelines range of 37-46 months of imprisonment.  *Id.*, 5A.  An upward variance reflecting the high-end of this range is appropriate consideration for Defendant's impact on multiple victims.

>   **B.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant**

A variance above the guidelines range is necessary to reflect the seriousness of the offense and provide adequate deterrence.  Deterrence includes both general deterrence and specific deterrence.  *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).  While general deterrence's goal is to "deter others from committing the same crime by demonstrating its disadvantageous consequences," specific deterrence's goal is "to incapacitate the wrongdoer, so as to protect society from further criminal activity."  *Irey*, 612 F.3d at 1227.  An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws."  *United States v. Corchado-Aguirre*, 629 F. App'x 837, 840 (10th Cir. 2015).

A sentence of 376 months of imprisonment reflects the seriousness of the offense.  Second-degree murder is one of the most serious federal crimes.  Congress clearly indicated the severity of the crime by making the maximum penalty imprisonment for life.  18 U.S.C. § 1111(b).  Furthermore, as a general deterrent, a sentence above the guideline range discourages the type of violence perpetrated by Defendant.  As a specific deterrent, Defendant will be incapacitated from committing this type of crime against his community for the duration of his prison sentence.  As noted by Doe's family, Doe was thirty-two years old when Defendant murdered him, stealing thirty-two years of life and memories.  It is a just punishment that Defendant lose approximately thirty-two years as well.

6

### C.  The Sentencing Guidelines for the Applicable Category of Offense Committed by the Applicable Category of Defendant

The Court must consider under 18 U.S.C. § 3553(a)(4) the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant.  The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role:  It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise . . .'"  *Kimbrough v. United States*, 552 U.S. 85, 109 (2007).  "In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'" *Id*. at 89. While a sentence within the guidelines is presumptively reasonable, a court may vary after consideration the sentencing factors.  *Gall*, 552 U.S. at 49.

A sentence slightly above the applicable guidelines range is supported by an analysis of the sentencing guidelines and related precedent.  Defendant's applicable guidelines range is 288 to 330 months.  However, a court may "depart upward to reflect the actual seriousness of the offense based on conduct … not pursued in the case."  U.S.S.G. § 5K2.21.  Although the United States is not requesting a departure, a variance consistent with this policy is warranted, as discussed above.  The guidelines range for aggravated assault as perpetrated against A.B. would be 37 to 46 months.  Combined, the applicable range would be 325 to 376 months.  A sentence within this range is reasonable.

### D.  The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who have Been Found Guilty of Similar Conduct

The court must consider the need to avoid unwarranted sentence disparities among defendants situated similarly.  18 U.S.C. § 3553(a)(6).  A sentence within the statutory limit,

accounting for the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly-situated defendants.  The values of the justice system are undermined when there is substantial variance in sentences for similar offenses between judicial districts and even between individual judges in a single district.  Furthermore, uniform application of the Guidelines can temper the unconscious influence of inappropriate factors in sentencing such as race or gender.  Given the compelling interest served by the guidelines in avoiding unwarranted and unjust disparities in sentencing, a sentence of 376 months, or within 14% of the assessed range, is close enough to avoid a major disparity.

### III.    Conclusion

WHEREFORE, the United States hereby requests the Court adopt the findings of the PSR and imprison Defendant for 376 months, followed by five years of supervised release with the conditions contained in attachment A of the PSR, and impose a $200 special penalty assessment.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*Electronically filed on February 11, 2021*

JOSEPH M. SPINDLE
Assistant U.S. Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that I filed the foregoing
pleading electronically through the CM/ECF system
which caused counsel of record to be served by
electronic means, as reflected on the Notice
of Electronic Filing, and other methods of service as
indicated therein on February 11, 2021.
     /s/
JOSEPH M. SPINDLE
Assistant U.S. Attorney